Armando GARCIA, individually and on behalf of a class of employees similarly situated, Plaintiff,

v.

PACE SUBURBAN BUS SERVICE, A DIVISION OF REGIONAL TRANSPORTATION AUTHORITY, a municipal corporation and Car Enterprises, Ltd., Defendants.

No. 96 C 25.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 23, 1996.

Ernest Thomas Rossiello, Margaret Ann Zuleger, Elena M. Dimopoulos, Rossiello & Associates, Chicago, IL, Margaret Moira Smith, Cook County State's Attorney, Chicago, IL, for Armando Garcia.

Tracy L. Potter, Steven Michael Hartmann, Freeborn & Peters, Chicago, IL, for Pace Suburban Bus Service and Car Enterprises, Ltd.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff sues his alleged former employers for overtime wages. Defendant Pace Suburban Bus Service (Pace) moves for summary judgment, contending that it was not plaintiff's employer. Defendant Car Enterprises, Ltd. (Car) also moves for summary judgment. It concedes that it employed plaintiff but contends that plaintiff is not covered by the overtime compensation provisions of the Fair Labor Standards Act because he is subject to the Motor Carrier exemption. Both motions are granted and judgment is entered for defendants.

The undisputed facts establish that Pace is a municipal corporation under the Regional Transportation Authority Act, 70 ILCS 3615/1.01. Car provides bus service to Pace under a series of contracts, more particularly Paratransit curb-to-curb dial-a-ride and fixed bus route services in portions of DuPage, Kane, Will, Cook and Lake counties in Illinois. Plaintiff concedes that he was hired, trained, disciplined and terminated by Car, that he got his work schedule from Car and that Car issued his paychecks. He claims, however, that Pace was a joint employer.

 The parties agree that the "economic reality test" cited by Pace is the applicable standard for determining Pace's status as an employer under the FLSA, and that the test inquires as to whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. Plaintiff contends that Car operates at the pleasure of Pace and that Pace decides whether plaintiff and other bus drivers will keep their jobs. He asserts that Pace established hiring criteria, reserved the right to remove plaintiff from his job, was trained in accordance with a Pace-required and Pace-approved training program, established bus route schedules that dictated his work hours and required that employees such as plaintiff comply with its drug/alcohol policy and fill out various forms that Pace evaluated. All that means, argues plaintiff,

that he could be considered an employee of Pace as well as Car because Pace maintained sufficient control over him to be so designated.

The record, however, is not helpful to plaintiff's contentions. The relationship between Pace and Car is governed by a written contract. That contract specifies routes and schedules but does not dictate who should drive them or how many hours they should work. Car agrees to provide a Pace-approved training program, but it is Car that provides the training. Pace can insist that a driver be removed from its routes but does not have any authority to require Car to terminate a driver or prohibit him from driving non-Pace routes. Car is required to adhere to various safety and reporting measures so as to assure Pace that Car is performing as promised and to advise Pace of any departures from normal performance. That includes drug- and alcohol-screening. Car distributes a Pace bus operator handbook, but it is optional reading because Car has its own training materials and policy manual. The record establishes, in short, that Pace, by contract, has safeguarded its own interests in its contracting out the operation of the bus service, but it does not involve itself in the day-to-day management of the business and does not exercise significant control over the employment relationship. In the circumstances here, Pace cannot fairly be termed an employer for the purposes of the FLSA. *See Burnison v. Memorial Hospital, Inc.,* No. 91–1072–B, 1992 WL 321608 (D.Kan. Oct.7, 1992); *Dole v. Simpson,* 784 F.Supp. 538 (S.D.Ind.1991); *Foote v. Howard P. Foley Co.,* No. 83 C 2446, 1986 WL 14137 (N.D.Ill.Dec.8, 1986). Accordingly, Pace is granted summary judgment with respect to the federal claim and the pendent state law claim is dismissed without prejudice.

 The claim against Car depends on whether plaintiff was subject to the jurisdiction of the Secretary of Transportation or the Secretary of Labor. The overtime provisions of the FLSA do not apply to employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to

the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). Section 31502 permits the Secretary to prescribe requirements for "qualification and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier...." The Secretary has the power to set maximum hours for drivers if the company engages in more than *de minimis* interstate commerce, and that includes a company that holds itself out as an interstate company and solicits that business even though its prospect of obtaining much of that business is poor and some of its drivers never drive in interstate commerce. *See Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947); *Reich v. American Driver Service, Inc.*, 33 F.3d 1153 (9th Cir.1994); *Marshall v. Aksland*, 631 F.2d 600 (9th Cir.1980); *Brennan v. Schwerman Trucking Co. of Virginia, Inc.*, 540 F.2d 1200 (4th Cir.1976).

That does not mean, however, that the Secretary of Transportation has automatic jurisdiction over all drivers of an interstate carrier. Pursuant to a notice of interpretation, 46 Fed.Reg. 37,902, 37,903 (1981), to which we defer, jurisdiction extends only to drivers who reasonably could be expected to make one of the carrier's interstate runs, and that means more than a remote possibility. *Reich v. American Driver Service, Inc.*, *supra*, at 1156 and n. 4.

We are not concerned here with private carriage. Defendant is both a motor common carrier and a motor contract carrier, with appropriate certification. Its Pace contract involves solely intrastate business, but it also operates an interstate charter business, a Sears/O'Hare shuttle and airport emergency services. Both of the last two services are in interstate commerce for the purposes of the Secretary of Transportation's authority. Car clearly is engaged in interstate commerce. The only issue is whether or not it has been clearly established that plaintiff could reasonably be expected to make one of the interstate runs, whether or not he actually did so. We turn then to the record evidence.

Plaintiff was employed by Car as a driver for two periods: July 12, 1993 to December 16, 1994, and February 20, 1995 to October 9, 1995. When he was first employed he signed a form acknowledging that he "may be asked to assist the Charter Department at some time." All Car drivers are subject to driving for the Charter Department any time, as needed. They are also subject to driving emergencies. When Car receives a call for an airport emergency the buses are driven by available drivers, and drivers are pulled off fixed routes—such as plaintiff's regular run—to drive airport emergencies, the O'Hare/Sears shuttle and Charter routes. The Supervisor of Fixed Route Services was at some time in the past a driver on plaintiff's routes and was occasionally pulled off those routes to drive charters or the Sears/O'Hare shuttle. As supervisor, he assigns drivers on plaintiff's routes to drive charter and the Sears/O'Hare shuttle. Airport emergencies are handled by whomever is available, and that may be a driver who regularly drives one of plaintiff's routes. Plaintiff, however, during his employment by Car, never was called upon to drive a charter or the Sears/O'Hare shuttle, and did not expect to be unless, perhaps, there were no other drivers for those services due to a temporary absence. He drove only the assigned bus routes. He does not refer to whether or not he ever drove airport emergency.

Defendant Car's affidavits are not as revealing as they could be. We are provided no information about how frequently Pace contract drivers were, during the relevant period, called upon to drive for the interstate services or from how large a pool of drivers those temporary assignments were made. We do not know whether the four-month standard in the notice of interpretation is met nor how that aspect of the notice might impact the exemption. If the facts were only those previously stated we would be inclined to conclude that Car had not conclusively demonstrated a reasonable expectation that a driver in plaintiff's situation would be called upon to make an interstate run, given that we should construe any FLSA exemption narrowly against the employer.

The Car affidavits go further, however. According to Car, all its drivers conform to the Federal Motor Carrier Safety Regulations and maintain all required DOT forms,

and all Car vehicles are maintained in accordance with ICC (DOT?) regulations. More importantly, the Federal Highway Administration regularly performs audits in which it has determined that all the drivers are subject to federal safety requirements. By that we take it to mean that the Secretary of Transportation has determined that all drivers are within the Secretary's jurisdiction. *See Dole v. Circle "A" Construction, Inc.*, 738 F.Supp. 1313, 1322–1323 (D.Idaho 1990). There is nothing to suggest that the Secretary of Labor disputes that assertion. In those circumstances we think that Car has established its exemption and its motion for summary judgment is, accordingly, granted.