**George ROSSI, an all other similarly situated, Plaintiff,**

v.

**ASSOCIATED LIMOUSINE SERVICES, INC., a Florida corporation, and Robert Boroday, an individual, Defendants.**

**No. 05–21004–CIV.**

United States District Court, S.D. Florida.

July 5, 2006.

Chris Kleppin, Harry O. Boreth, Glasser Boreth Ceasar & Kleppin, Plantation, FL, for Plaintiff.

Sara Walters, Conrad & Scherer, Fort Lauderdale, FL, Susan H. Aprill, for Defendants.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

BANDSTRA, Chief United States Magistrate Judge.

THIS CAUSE came before the Court on (1) Plaintiff's Motion For Partial Summary Judgment as to all Counts on the Issues of Whether he was an Exempt Employee under the Motor Carrier Exemption and the TaxiCab Exemption. Whether he was an Employee, Worked Overtime in at Least One Workweek, and Whether the Defendant Violated the Recordkeeping Provisions of the FLSA (D.E.54) filed on January 9, 2006; and (2) Defendants' Motion for Final Summary Judgment (D.E.64) filed on March 27, 2006. In accordance with the consent to jurisdiction of the parties, this action was referred to United States Magistrate Judge Ted E. Bandstra by the Honorable Jose E. Martinez on June 28, 2005, for all matters to which the parties consented including motions for summary judgment in accordance with 28 U.S.C. § 636(c). Accordingly, the undersigned conducted a hearing on theses motions on May 11, 2006. Having considered the parties summary judgment motions, the pertinent portions of the record and applicable law, it is hereby

ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion For Partial Summary Judgment as to all Counts on the Issues of Whether he was an Exempt Employee under the Motor Carrier Exemption and the TaxiCab Exemption, Whether he was an Employee, Worked Overtime in at Least One Workweek, and Whether the Defendant Violated the Recordkeeping Provisions of the FLSA is GRANTED with respect to the issues of whether he was an exempt employee under the Motor

Carrier Exemption and the TaxiCab exemption and whether he was an employee but DENIED in all other respects; and

(2) Defendants' Motion for Final Summary Judgment is DENIED.

## *INTRODUCTION*

On May 23, 2005, George Rossi ("plaintiff") filed a first amended complaint against Associated Limousine Services, Inc. ("Associated") and its President and Chief Executive. Robert Boroday, (jointly "defendants") alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § § 201, *et seq.* Associated is a Florida corporation engaged in the business of providing chauffeured transportation to its customers. Plaintiff was employed by Associated as a chauffeur from approximately January 2005 to March 2005. Plaintiff alleges that during the course of his employment with Associated he routinely worked in excess of forty hours per week. Plaintiff further alleges that Associated failed to compensate him at the statutory rate of time and one-half for those hours worked in excess of forty as required by the FLSA. Plaintiff alleges that he is entitled to be compensated at the rate of time and one-half for those hours expended on transporting customers as well as for the hours expended on "waiting" and "on call" time. *See* Am.Cpt, ¶ 29. In addition, plaintiff alleges that Associated provided no compensation at all for certain hours worked including time expended for "no shows." Am.Cpt. ¶ 33.

Based on these and other allegations, plaintiff brought this action against his former employer seeking an award of overtime backpay, liquidated and compensatory damages, costs and attorneys' fee for failure to pay unpaid and overtime wages as required by the FLSA, 29 U.S.C. §§ 207 & 216 (Count I), and for wage rate and minimum wage rate violations of the FLSA (Count II).

On June 6, 2005, Associated filed its answers essentially denying the allegations of the complaint and asserting several affirmative defenses including, *inter alia,* the defenses that this Court does not have subject matter jurisdiction because the activities of plaintiff are exempt from the FLSA under both the "motor carrier" exemption and the "taxicab operator" exemption. *See* 29 U.S.C. §§ 213(b)(1) & 213(b)(17), respectively.

On January 9, 2006, plaintiff filed the instant motion for partial summary judgment arguing that it is undisputed that he was an employee of Associated[1] and was never paid for overtime during the course of his employment. Plaintiff further contends that he was not exempt from the FLSA's overtime provisions and, thus, is entitled to judgment as a matter of law. Specifically, plaintiff argues that he was not exempt under the motor carrier exemption set forth in 29 U.S.C. § 213(b)(1) because he never drove across state lines. Plaintiff further argues that he was not exempt under the taxicab operator exemption set forth in 29 U.S.C. § 213(b)(17) because Associated is in the business of operating limousines, not taxicabs, and he only drove limousines for Associated. In addition, plaintiff contends that Associated admitted that it violated the record keeping requirements of the FLSA set forth in 29 U.S.C. § 211(c) so that he is entitled to summary judgment on this claim. Finally, plaintiff contends that the evidence demonstrates that he worked overtime hours and, thus he is entitled to summary judgment on his claim for overtime compensation.

---

**1.** Associated does not dispute that plaintiff was an employee as opposed to an independent contractor. Accordingly, plaintiff is entitled to summary judgment on this issue.

On March 27, 2006, defendants filed their [cross] motion for final summary judgment, arguing that defendant is exempt from the overtime and minimum wage provisions of the FLSA under the motor carrier exemption and the taxicab exemption. Alternatively, defendants argue that even if they are not exempt from the overtime and minimum wage requirements of the FLSA, plaintiff has not established a *prima facie* case that he worked any overtime hours for which he has not already been compensated.

### STANDARD OF REVIEW

The court in reviewing a motion for summary judgment is guided by the standards set forth in Rule 56(c) of the Federal Rules of Civil Procedure which provides as follows:

> .... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ....

The moving party bears the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Further, in addressing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368 (11th Cir.1982), *citing, Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608; *Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). If the record presents issues of material fact the court must deny the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608. The non-moving party, however, cannot rest upon mere allegations, but must rebut any facts properly presented by the moving party through affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *Id.* at 398 U.S. 155, 90 S.Ct. at 1607. Moreover, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

If the moving party does not bear the burden of proof at trial, it satisfies its initial burden on summary judgment by either of two methods: (1) by producing affirmative evidence negating a material fact that is necessary to the non-movant's case, thus demonstrating that the non-moving party will be unable to prove its case at trial, or (2) by affirmatively showing the absence of evidence in the record to prove a fact necessary to the non-movant's case, and thus to support a judgment for the moving party on the issue in question. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir.1993). If the moving party uses the first method, the non-moving party "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to negated." *Id.* at 1116. If the second method is used, the non-moving party may either demonstrate that the record contains evidence that was "overlooked or ignored" by the movant, or by "com[ing] forward with additional evidence sufficient to withstand a directed verdict at trial based on the alleged evidentiary deficiency." *Id.*

While the burden on the movant is great, the non-moving party has a duty to present affirmative evidence in order to defeat a properly supported motion for

summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is "merely colorable" or "not significantly probative," is not enough. *Id.; see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment). The non-movant may not rest on mere allegations at this point, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

## FINDINGS AND CONCLUSIONS

I. *Exemptions to Plaintiff's Overtime Compensation Claim*

Plaintiff's claim for overtime compensation is premised on Section 207(a) of the FLSA which provides, in relevant part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Thus, the FLSA requires an employer such as Associated to compensate its employees at a rate not less than one and one-half times their regular rate of pay for those hours worked in excess of forty hours per week. It is undisputed that plaintiff was never paid overtime compensation during his employment at Associated. Therefore, the issue here is whether plaintiff falls within the scope of any of the exemptions to the overtime requirements of the FLSA.

Associated argues that plaintiff is exempt from the overtime provisions of the FLSA under the motor carrier exemption and the taxicab exemption. In contrast, plaintiff argues that these exemptions are not applicable to him under the circumstances of this case. The determination of whether a given employee falls within the scope of an FLSA exemption, while based on the underlying facts, is ultimately a legal question. *Viart v. Bull Motors, Inc.*, 149 F.Supp.2d 1346, 1349 (S.D. Fla 2001). Exemptions under the FLSA are to be construed narrowly against the employer who asserts them. *Brock v. Louvers and Dampers, Inc.*, 817 F.2d 1255, 1256 (6th Cir.1987) (citing *Arnold v. Ben Kanowsky*, 361 U.S. 388, 396, 80 S.Ct. 453, 458, 4 L.Ed.2d 393 (1960)). The employer has the burden of showing that it is entitled to the exemption by a preponderance of the evidence. *Dybach v. State of Fla. Dept. Of Corrections*, 942 F.2d 1562, 1566 n. 5 (11th Cir.1991). For the reasons stated below, the Court finds that defendants have failed to meet their burden of establishing either exemption.

1. *The Motor Carrier Exemption*

Plaintiff moves for summary judgment on the issue of the motor carrier exemption arguing that the undisputed evidence presented here establishes that this exemption is not available to Associated. In contrast, defendants seek summary judgment in their favor arguing that the evidence demonstrates that it is exempt from the minimum hours rule because Associated is an interstate "motor carrier" whose activities are subject to the exclusive regulation of the Secretary of Transportation.

The exemption relied on is Section 213(b)(1)of the FLSA, which provides that Section 207 of that statute does not apply "to any employee with respect to whom the Secretary of Transportation has power

to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." As explained by the Eleventh Circuit, "[t]he Secretary has power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Alvarado v. I.G.W.T. Delivery Systems,Inc.*, 410 F.Supp.2d 1272 (S.D.Fla.2006)(quoting *Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 181–82 (11th Cir.1991)). Thus, in order to determine whether defendants fall within the motor carrier exemption to the FLSA, the Court must determine whether (1) Associated is a motor carrier subject to the Secretary's jurisdiction and (2) whether plaintiff was engaged in activity directly affecting the safety of operation of motor vehicles in interstate commerce.

■ Addressing these issues, the Court notes that a motor carrier is "a person who provides motor vehicle transportation for compensation," 49 U.S.C. § 13102(14). The term "transportation" includes a "motor vehicle... related to the movement of passengers or property...." 49 U.S.C. § 13102(23)(A)(B). In this case, it is undisputed that Associated is engaged in the transportation of passengers by motor carrier for compensation. What is disputed, however, is whether Associated is subject to the jurisdiction of the Secretary of Transportation, Generally, the Secretary has jurisdiction over motor carriers that transport passengers between a place in a State and a place in another State. 49 U.S.C. § 10521(a)(1)(A). Stated otherwise, the Secretary only has jurisdiction over

interstate transportation. With respect to this interstate commerce requirement, the majority of courts in this district and elsewhere have held that even if the employee of the carrier does not cross state lines, *i.e.* transport passengers out of state, the interstate requirement is satisfied if the goods being transported within the border of one state are involved in a "practical continuity of movement". *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460 (1943).

Associated claims that it operates In interstate commerce because it operates in the "practical continuity of movement" due to its participation in "through-ticketing" or other common arrangements with out of state entities that arrange for both interstate and intrastate travel of its customers. These entities include out of state transportation companies, meeting planners and destination management companies who in turn make arrangements with airlines, hotels and local carriers to provide accommodations and transportation for their clients. *See* Second Declaration of Robert Boroday. ¶ ¶ 4–7. In particular, Associated notes that pursuant to contract, it does business with Boston Coach, a ground transportation company, who in turn does business with air carriers and other companies involved in interstate commerce. *Id.*, Exhibit A. Defendants cite to *Chao v. First Class Coach Co., Inc.*, 214 F.Supp.2d 1263 (M.D.Fla.2001), as support for their argument that their activities should be considered as involving interstate commerce.

In *Chao*, the court found that a bus service was exempt from the FLSA under the motor carrier exemption where 5–10% of the ride tickets for the bus service were purchased out of state by visitors to the state even though defendant's drivers never left the state. As further support, Associated argues, *inter alia*, that *United*

*States v. Yellow Cab Co.,* 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947) and *Charter Limousine, Inc. v. Dade County Bd. of County Commissioners,* 678 F.2d 586 (5th Cir. Unit B 1982), which hold that entirely local transportation, to and from hubs such as railroad stations and airports, of passengers in itself constitute the practical continuous interstate transportation of passengers. Thus, Associated contends that its limousine company is part of a through-ticketing or other common arrangement and, as such, is engaged in interstate commerce under the Motor Carrier Act.

While at first blush Associated's arguments appear persuasive, the Court concludes, as a matter of law, that Associated is not exempt from the FLSA under the Motor Carrier Act for the reasons well stated by this Court in *Richard Cartun v. Carey Int'l, Inc., et al.,* Case No. 04–21074–CIV–UUB. In *Cartun,* the Court found that the motor carrier exemption did not apply to a limousine company where the evidence was insufficient to demonstrate that it was a party to a through ticketing arrangement with an air carrier. Accordingly, Judge Ungaro–Benages denied defendant limousine company's motion for summary judgment on this issue. In so ruling, Judge Ungaro–Benages relied on the decisions rendered by the Interstate Commerce Commission and its successor, the Surface Transportation Board, regarding the Department of Transportation's jurisdiction over limousine drivers providing wholly interstate transportation. *See Motor Transportation of Passengers Incidental to Air.* 95 M.C.C. 526, 536 (1964) (motor transportation of passengers by a motor carrier "operating wholly within a state" represents intrastate commerce regardless of passengers' intent to continue or complete an interstate journey.); *In re Kimball,* 131 M.C.C. 908 (1980) (through ticketing arrangement must be between the motor carrier and an air car-

rier for continuous passage in order to render the motor carrier's operations interstate transportation.) Significantly, Judge Ungaro–Benages also distinguished defendant's reliance on *United States v. Yellow Cab Co.,* 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947) and *Charter Limousine, Inc. v. Dade County Bd. of County Commissioners,* 678 F.2d 586 (5th Cir. Unit B 1982), by noting that these cases construe the terms interstate commerce or interstate transportation based on the commerce clause jurisprudence rather the FLSA or the Motor Carrier Act.

Indeed, decisions under the FLSA hold that the Secretary of Transportation has the power to set maximum hours for drivers if the company engages in more than *de minimi* interstate commerce which includes a company that holds itself out as an interstate company and solicits that business even though its prospect of obtaining such business is poor and some of its drivers never drive in interstate commerce. *See Reich v. American Driver Service, Inc.,* 33 F.3d 1153 (9th Cir.1994); *Morris v. McComb,* 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947). However, the Secretary of Transportation does not have jurisdiction over all drivers of an interstate carrier. Construing a Notice of Interpretation issued by the Secretary of Transportation, the court in *Garcia v. Pace Suburban Bus Service,* 955 F.Supp. 75, 77 (N.D.Ill.1996) found that "jurisdiction extends only to drivers who reasonably could be expected to make one of the carrier's interstate runs, and that means more than a remote possibility." *Id.,* citing *Reich v. American Driver Service, Inc.,* 33 F.3d 1153 (9th Cir.1994). Thus, a carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof that inter-

state business was solicited. *Reich* at 1156.

▋ Applying this standard here, the Court finds that Associated has not met its burden of establishing by a preponderance of the evidence that it was engaged in interstate commerce. Significantly, Associated has failed to present any evidence showing an actual trip in interstate commerce. Rather, Associated relies solely on its contract with Boston Coach as evidence of a through-ticketing arrangement whereby interstate business was solicited. However, Associated fails to demonstrate what percentage, if any, of its business is derived from this arrangement. Notwithstanding, a through-ticketing arrangement must be between the motor carrier and air carrier for continuous passage in order to render the motor carrier's operation interstate transportation. *See In re Kimball, supra.* Associated has no such arrangement with any air carrier. Associated's only arrangement is with Boston Coach, a ground transportation company which stands in the same position as a travel or tour agency, and thus, is insufficient to bring a motor carrier's operation within the Motor Carrier Act exemption. *Id* at 917–18. *See also Garcia v. Carey International, Inc.,* Case No. 04–21074–CIV–Ungaro–Benages (denying defendant's motion for summary judgment on the motor carrier exemption). Accordingly, the Court concludes that Associated has failed to demonstrate that its involvement in interstate commerce was beyond a remote possibility.[2]

This conclusion is further supported by the Declarations of Robert Boroday who attests that Associated's business is to arrange local ground transportation primarily in Miami–Dade and Broward counties (with occasional trips to Palm Beach County and beyond). *See* Second Declaration, ¶ 3. "Rarely does Associated transport anyone further than 70 miles from pickup." *Id.,* ¶ 5. Consistent therewith, it is undisputed that plaintiff never transported any passengers or goods across state lines. *See* Rossi Affidavit, ¶ 4.

Accordingly, the Court finds that Associated does not fall under the regulation of the Secretary of Transportation or the Motor Carrier Act.[3] Thus, plaintiff's motion for summary Judgment based on the "motor carrier" exemption is granted and defendant's cross-motion for summary judgment on this same issue is denied.[4]

### 2. *The Taxicab Exemption*

Plaintiff also moves for summary judgment on the issue of the taxicab exemption, arguing that the undisputed evidence of this case establishes that this exemption is not available to Associated as applied to him. Defendants have concluded otherwise and seek summary judgment in their favor, arguing that their business falls within the taxicab exemption to the FLSA's wage and overtime requirements. The FLSA exempts from its overtime provisions "any driver employed by an employer engaged in the business of operating taxicabs." *See* 29 U.S.C. § 213(b)(17).

---

**2.** Indeed, Associated has even failed to meet the low threshold of interstate activity found in *Chao v. First Class Coach Company Inc.,* 214 F.Supp.2d 1263 (M.D.Fla.2001).

**3.** Having so found, the Court finds it unnecessary to address the issue of whether plaintiff was engaged in activity directly affecting the safety of operation of motor vehicles in interstate commerce.

**4.** This ruling was not influenced by the recent amendment to the Motor Carrier Act which defines the term "motor vehicle", the Court finding this amendment inapplicable since it took effect on August 10, 2005, well after plaintiff's employment with Associated ceased.

The FLSA does not include any definition of the term "business of operating taxicabs." Defendants rely on the definition provided in Chapter 24h of the Department of Labor Field Operations Handbook (1999 ed.) which states:

24h01 " *Business of operating taxicabs.*" The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation need of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

Defendants contend that its business falls directly within the parameters of this regulatory definition as applied in *Cariani v. D.L.C. Limousine Service, Inc.,* 363 F.Supp.2d 637 (S.D.N.Y.2005), where the court, focusing on the above definition, found that the exemption applied to a limousine company where the company offered door to door services with the time and destination determined by the convenience of the customer, the cars did not adhere to fixed routes, the company did not have contracts with airlines and its fares were more or less equivalent to the fares of taxicab companies.

Defendants contend that the business of Associated is similar to the limousine company in *Cariani* in that plaintiff's duties consisted of driving passengers to requested destination in sedan type vehicles (Lincoln Town Cars) without fixed routes. In addition, Associated is not a party to a contract for recurrent transportation, but rather operates on an event by event basis. *See* Second Declaration of Robert Boroday. ¶ 10. Thus, defendants maintain that their business falls within the taxicab exemption.

While it is true that Associated operates like a taxicab company in certain respects such as allowing its customers to determine the destination of the vehicle, this Court finds under the plain meaning of 29 U.S.C. § 213(b)(17) that Associated Limousine Services, as its name clearly states, is in the business of operating limousines, not taxicabs. It is undisputed that Associated advertises itself as a limousine company. It is also undisputed that Associated does not own or operate a taxicab and is not licensed to provide taxicab transportation. *See* Rossi Aff't, ¶ 5. Consistent therewith, Associated's drivers do not cruise for customers and cannot be hailed down by customers. Rather, the transportation must be prearranged. In addition, Associated's vehicles do not have taximeters so fares are determined in advance based on a flat or hourly rate. *Id.* Based on these factors, the Court finds that Associated does not fall within the taxicab exemption.

This finding is supported by decisions from this district and elsewhere which have addressed this issue under similar circumstances. Significantly, the Honorable Patricia A. Seitz in *Powell v. Carey International, Inc.,* Case No. 05–21395, found that the taxicab exemption did not apply to a South Florida limousine company because the company advertised themselves as a limousine company, the drivers were prohibited from cruising for passengers and its fares were based on a flat or hourly rate as opposed to a meter rate. Several courts from other districts have likewise found that limousine services are not covered by the taxicab exemption. *See Wirtz v. Cincinnati, Newport and Coving-*

ton Transportation Co., 375 F.2d 513 (6th Cir.1967)(finding that "red top" sedans which were not metered, did not have vacancy signs and which were not advertised as taxicabs did not fall under the taxicab exemption); Herman v. Brewah Cab. Inc., 992 F.Supp. 1054 (E.D.Wis.1998) (taxicab exemption did not apply to a transportation service for the elderly and handicapped); Airlines Transp. v. Tobin, 198 F.2d 249 (4th cir.1952)(holding that airport limousine company was not entitled to the benefit of the taxicab exemption). See also Opinion Letter, Wage and Hour Division of the U.S. DOL, 1998 WL 852774, at *1 (April 17, 1998) ("While your client's vehicles might be involved in a number of activities associated with taxicab operations, we believe that, overall, your client's vehicles do not service the same transportation needs as taxicabs. The ordinary meaning of that term contemplates vehicles that are offered for hire to the general public on city streets. While it is not necessary that all the transportation be provided to persons who 'flag down' the vehicles, that is an important aspect of the common meaning of 'taxicab which your client's vehicles do not possess.")

█ Based on the foregoing authority and the principle that exemptions under the Act are to be narrowly construed, this Court concludes that defendants have failed to prove that they are engaged in the business of operating taxicabs within the meaning of § 213(b)(17). In so concluding, the Court remains respectful of the Cariani decision and its reliance on § 24h of the Department of Labor's Field Operation Handbook, but finds that principles of statutory construction prohibit this

court from following that decision under the circumstances of this case.[5]

Accordingly, plaintiff's motion for summary Judgment based on the "taxicab" exemption is granted and defendant's cross-motion for summary judgment on this same issue is denied.

## II. Whether Plaintiff Worked Overtime

Having found that neither the motor carrier exemption nor the taxicab exemption are applicable to plaintiff's claim for overtime wages under the FLSA, the Court next addresses whether plaintiff is entitled to summary judgment on the issue of whether he worked overtime, Plaintiff contends that he is entitled to summary judgment on this issue based on the Eleventh Circuit Pattern Jury Instruction which provide, in pertinent part:

In order to prevail on this claim [for overtime compensation], the Plaintiff must prove each of the following facts by a preponderance of the evidence:

First: That the plaintiff was employed by the Defendants;

Second: That the plaintiff was engaged in commerce to the extent that his work was so closely related to the movement of commerce that it may be deemed a part of it, rather than merely an isolated local activity; and

Third: That the Defendants failed to pay the Plaintiff the overtime as required by law.

Defendants "admit that plaintiff was not paid time and one-half because he was not paid on an hourly basis." See Answer to First Amended Complaint, ¶ 23. Relying solely on this Answer, plaintiff seeks sum-

---

5. Indeed, the Handbook itself provides that driving in connection with the operation of an airport limousine service is an example of work which is non-exempt under the taxicab exemption. See § 24h03. While the record does not suggest that defendant operates an airport limousine service, this example clearly indicates that not all limousine services fail within the broad definition of "business of operating taxicabs."

mary judgment on the issue that he worked overtime hours for which he was not paid.

Defendants respond by arguing that plaintiff has failed to meet his initial burden of demonstrating that he performed work for which he was improperly compensated. In support, defendants note that plaintiff's evidence of overtime work is based solely on his own "mental notes," which, in defendant' view, is insufficient to carry plaintiff's burden on summary judgment.

Reviewing this issue, the Court first notes that it is well-established that an employee who brings suit under § 16(b) of the FLSA for unpaid minimum wages or unpaid overtime compensation and liquidated damages has the initial burden of proving that he performed work for which he was improperly compensated. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir. 1972). When accurate records or precise evidence of the hours worked do not exist, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *The Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23 (2d Cir.2002)(quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687, 66 S.Ct. 1187).

In this case, plaintiff, without specifying the number of hours worked in any given week, attests that he "worked overtime hours every week for the Defendants (more than forty)." *See* Rossi Affidavit, ¶ 7. Defendants also have failed to produce evidence that definitively establish the number of hours· work by plaintiff. However, defendants have produced manifests, dispatch screens and payroll reports from which it may be possible to determine or accurately estimate the number of hours worked by plaintiff.[6] Moreover, it is undisputed that plaintiff was paid a percentage of the trip rate pursuant to contract. *See* Third Boroday Declaration, ¶ 8, Rossi Affidavit, ¶ 2.

■ Based on the minimal amount of evidence presented, the Court finds material facts in dispute concerning whether plaintiff performed work for which he was improperly compensated. While defendants acknowledge that plaintiff was not paid time and one-half, they do not admit that he was improperly compensated under the FLSA. The precise number of hours plaintiff worked are clearly in dispute and remain unresolved by the small amount of record evidence. These factual disputes which are material to the outcome of this case cannot be resolved at this stage of the litigation based on the slim evidence before this Court. While the amount of work performed by plaintiff may be determinable by just and reasonable inference, the Court finds any such inference to be premature at this time.

Accordingly, the plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment on the issue of whether plaintiff worked overtime within the meaning of the FLSA are both denied.[7]

---

**6.** Defendants' alleged record-keeping violations are discussed *infra.*

**7.** In view of this finding, the Court finds issues concerning the type of damages (liqui-

dated, pain and suffering and declaratory) to be premature and, thus, they are not further addressed herein.

III. *Defendants' Record–Keeping Compliance*

Plaintiff next moves for summary judgment on the issue of whether defendant violated the record-keeping provisions of the FLSA, 29 U.S.C. § 211(c). In support, plaintiff contends that defendants admittedly violated these provisions as evidenced by their answer which states that it merely "maintains records from which the number of hours when plaintiff began and concluded trips may be computed." *See* Defendant's Answer, ¶ 25.

Defendants respond by arguing, *inter alia,* that their compliance with the statutory record-keeping provisions of the FLSA is irrelevant as the statute does not provide plaintiff with a private cause of action for alleged statutory record-keeping violations. The Court agrees.

 Section 216(b) of the FLSA, provides that an employee may bring a private action against an employer for unpaid overtime or minimum wages. *See* 29 U.S.C. § 216(b). However, this provision does not allow employees to bring actions, either for civil penalties, damages, or injunctive relief, for violations of the FLSA's record-keeping provisions. Rather, "authority to enforce the Act's record-keeping provisions is vested exclusively with the Secretary of Labor." *Elwell v. Univ. Hosp. Home Care Serv.,* 276 F.3d 832, 843 (6th Cir.2002) (citing 29 U.S.C. § 217 which authorizes the Secretary to initiate injunction proceedings or restrain any violation of 19 U.S.C. § 215 including 19 U.S.C. § 215(a)(5), which makes it unlawful for an employer to fail to comply with the record-keeping requirements of 29 U.S.C. 211(C)); *see also Powell v. Florida,* 132 F.3d 677, 678 (11th Cir.1998), *cert. denied,* 524 U.S. 916, 118 S.Ct. 2297, 141 L.Ed.2d 158 (1998) (holding that the plain language of the Act provides that the Secretary has exclusive authority to bring actions for injunctive relief).

Because the FLSA does not provide plaintiff with the right to request injunctive relief for alleged record-keeping violations, plaintiff's motion for summary judgment on this issue is denied.

### CONCLUSION

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion For Partial Summary Judgment as to all Counts on the Issues of Whether he was an Exempt Employee under the Motor Carrier Exemption and the TaxiCab Exemption, Whether he was an Employee, Worked Overtime in at Least One Workweek, and Whether the Defendant Violated the Recordkeeping Provisions of the FLSA is GRANTED with respect to the issues of whether he was an exempt employee under the Motor Carrier Exemption and the TaxiCab exemption and whether he was an employee and DENIED in all other respects; and

(2) Defendants' Motion for Final Summary Judgment is DENIED.