**R. Scott HUTSON, Plaintiff,**

v.

**RENT–A–CENTER, INC., Defendant.**

**No. CIV.A.4:00–CV–198(HL).**

United States District Court,
M.D. Georgia,
Columbus Division.

Dec. 11, 2001.

---

Ronald S. Iddins, Columbus, GA, for R. Scott Hutson.

Marcus Benton Calhoun, Jr., George Golden Boyd, Jr., Columbus, GA, Robert F. Friedman, Franklin E. Wright, Dallas, TX, for Rent–A–Center, Inc.

LAWSON, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (Tab # 10) and Plaintiff's Motion to Allow Amendment (Tab # 15).

## I. FINDINGS OF FACT

Rent–A–Center operates stores throughout the United States, including stores in Georgia and Alabama. (Church Decl. ¶ 3.) Rent–A–Center rents merchandise, which it owns, to customers on a rent-to-own basis. *Id.* at ¶ 4. The merchandise comes from existing stock or through its merchandise catalog. (Hutson Dep. at 40.) When merchandise is ordered from the catalog, it is shipped directly to the store from a vendor, almost all of which are located almost exclusively outside the state of Georgia. (Church Decl. ¶ 8.) The merchandise is delivered by Rent–A–Center employees in Rent–A–Center trucks to customers in Georgia and Alabama. *Id.* at ¶ 6.

Plaintiff, Scott Hutson, was employed by Rent–A–Center in Columbus, Georgia from March 1998 until February 2001. (Hutson Dep. at 17.) The stores at which Plaintiff worked had customers in Georgia and Alabama. *Id.* at 52, 56. Plaintiff was hired as an Account Manager. As an Account Manager, Plaintiff "spent a substantial portion of his time transporting furniture and appliances to the homes of customers of the Defendant's 'rent to own' business." (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. at 6.) Plaintiff received a promotion and became an "Inside Outside Manager" from October 16, 1999 until February 3, 2000. Plaintiff testified that as an Inside Outside Manager, he still made deliveries "on average about twice … a week." (Hutson Dep. at 72–73.) Plaintiff resumed his "Account Manager" position on February 3, 2000. *Id.* at 76.

On November 13, 2000, Plaintiff sued Rent–A–Center alleging violations of the overtime pay provisions of the Fair Labor Standards Act ("FLSA").

## II. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

"[T]he plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time and discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

A district court "can only grant summary judgment 'if *everything* in the record … demonstrates that no genuine issue of material fact exists.'" *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir.1986)(emphasis in original) (citation omitted). Genuine disputes are those where the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In deciding whether a genuine factual issues exist, the court must accept the truth of Plaintiff's evidence and must draw all reasonable inferences in Plaintiff's favor. *Cottrell v. Caldwell,* 85 F.3d 1480, 1486 n. 3 (11th Cir.1996). The court may not weigh conflicting evidence or make credibility determinations. *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th Cir.1993).

## B. Fair Labor Standards Act

The Fair Labor Standards Act of 1938 ("FLSA") established minimum labor standards in order to eradicate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C.A. § 202(a) (1998). Under Section 7 of the FLSA, covered employees, which include those engaged in commerce or in the production of goods for commerce, must be paid the minimum wage for each hour worked and must be paid at one and one-half times their regular rate of pay for hours worked in excess of forty in a workweek. 29 U.S.C.A. §§ 206, 207. In Plaintiff's Complaint, Plaintiff alleges that he is entitled to receive overtime pay for each week in which he worked more than forty hours. (Compl. ¶ 3.)

### 1. Overtime Exemption—Section 13(b)(1)

Defendant argues that Plaintiff is exempt from the overtime provisions, pursuant to Section 13(b)(1) of the Fair Labor Standards Act, which provides an exemption from the maximum hours and overtime pay requirements of Section 7 of the Act. An employee is exempt if he is an "employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C.A. § 213(b)(1).

The three elements to the Section 13(b)(1) exemption are (1) the employee must be employed by a motor carrier, (2) the employee must affect highway safety, and (3) the employee's activities must in-

volve the interstate transportation of goods. 29 C.F.R. § 782.2 (2001); *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181–82 (11th Cir.1991).

### a. Rent–A–Center is a Motor Carrier

Title 29 U.S.C.A. § 213(b)(1) refers to the Secretary of Transportation's power pursuant to 49 U.S.C.A. § 31502. Section 31502 states:

(a) Application.—This section applies to transportation—

(1) described in sections 13501[1] and 13502 of this title..

(b) Motor carrier and private motor carrier requirements.—The Secretary of Transportation may prescribe requirements for—

(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and

(2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

Thus, the Secretary of Transportation has the power to regulate employees of motor carriers whose duties affect safety on the highways when interstate shipments of property are involved. 49 U.S.C.A. §§ 31501, 31502. Title 49 U.S.C.A. § 13102(13) defines "motor private carrier:"

The term "motor private carrier" means a person, other than a motor carrier, transporting property by motor vehicle when—

(A) the transportation is as provided in section 13501 of this title;

---

1. Title 49, U.S.C.A. § 13501 provides: "The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier (1) between a place in (A) a State and a place in another State; (B) a State and another place in the same State through another State ..."

(B) the person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

■ Rent–A–Center rents merchandise, which it owns, to customers on a rent-to-own basis. Rent–A–Center delivers merchandise from its store in Columbus, Georgia to its customers. These deliveries include deliveries in Phenix City, Alabama. (Hutson Dep. at 73–74.) Since Rent–A–Center transports property which it owns across state lines in furtherance of its commercial enterprise, the Court finds that Rent–A–Center is a motor carrier.

### b. Plaintiff's Duties Affect Highway Safety

At all times during his employment, Plaintiff's job duties included making deliveries as a driver, in Rent–A–Center trucks, to customers in Georgia and Alabama. (Hutson Dep. at 55, 56, 73, 74.) As an Account Manager, he spent a "substantial" portion of his time making deliveries. When he became an Inside Outside Manager, the number of deliveries he made decreased; however, he still made deliveries, though not as frequently as when he was an Account Manager. Plaintiff testified that as an Inside Outside Manager, he made deliveries "on average about twice ... a week." (Hutson Dep. at 72–73.)

The Supreme Court has specifically ruled that drivers affect highway safety. *See Levinson v. Spector Motor Serv.*, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947); *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 137, 92 L.Ed. 44 (1947); 29 C.F.R. § 782.2(b)(2) (2001). Thus, since Plaintiff was a driver, he was engaged in safety affecting activities.

Plaintiff argues that, as an Inside Outside Manager, the exemption does not apply to him. (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. at 6.) Plaintiff refers to *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 67 S.Ct. 954, 960, 91 L.Ed. 1184 (1947), where the Court found a *de minimis* exception to the application of the Motor Carrier Act. In *Pyramid*, the Court held that persons who only handle freight before or after loading perform tasks that may be too "trivial, casual, or occasional" to affect safety and bring them under the Motor Carrier Act's authority. *Id.* The workers in *Pyramid* are distinguishable from Plaintiff. In *Pyramid*, the workers were loaders who did not drive in interstate commerce. Here, the Plaintiff was a driver, even during the time he worked as an Inside Outside Manager. The former Fifth Circuit affirmed a decision that held that the *Pyramid de minimis* exception does not apply to drivers: "the *de minimis* rule should seldom, if ever, be applied to one who drives a motor vehicle carrying property of a private carrier in interstate commerce." *Sinclair v. Beacon Gasoline Co.*, 447 F.Supp. 5, 11 (W.D.La.1976), *aff'd*, 571 F.2d 978 (5th Cir.1978).

The Court recognizes that the Plaintiff did not make as many deliveries during the time he was employed as an Inside Outside Manager. However, he still made deliveries approximately twice a week, and therefore still falls within the exemption:

As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this paragraph, he comes within the exemption in all workweeks when he is employed at such job. This general rule assumes that the activities involved in

the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce. Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation."

29 C.F.R. § 782.2(b)(3) (2001).

This Court has formerly addressed a similar argument. In *Webb v. Athens Newspapers, Inc.*, 999 F.Supp. 1464, 1472 (M.D.Ga.1998), the Court rejected the argument that 13(b)(1) activities must be a "substantial" part of the employee's duties. The Court followed the Supreme Court's decision in *Levinson*, stating that "[i]t is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power." *Id.* (quoting *Levinson*, 67 S.Ct. at 944).

Based on these reasons, the Court finds that Plaintiff's job duties included being a driver, and as a driver he affects highway safety, and thus he meets the second prong of the Section 13(b)(1) exemption.

### c. Plaintiff's Activities Involved the Interstate Transportation of Goods

■ A minor involvement in interstate commerce as a regular part on an employ-

ee's duties will subject that employee to the jurisdiction of the Department of Transportation. *Morris*, 68 S.Ct. at 136; *Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir.1968), *cert. den.*, 393 U.S. 971, 89 S.Ct. 404, 21 L.Ed.2d 384 (1968).

At all times during Plaintiff's employment with Rent–A–Center, he made deliveries as a driver to customers in Georgia and Alabama. (Hutson Dep. at 55, 56, 73, 74.)

■ In addition to driving goods across state lines, Plaintiff also made intrastate deliveries of goods ordered from out-of-state vendors. Plaintiff made intrastate deliveries of goods which had been specially ordered from out of state for Rent–A–Center customers. (Hutson Dep. at 41–43.) This intrastate delivery also renders him exempt from the overtime provisions of the Fair Labor Standards Act: "To be subject to the Secretary of Transportation's jurisdiction pursuant to the Motor Carrier Act, a motor carrier must be engaged in interstate commerce, which requires either the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce." *Barefoot v. Mid–America Dairymen, Inc.*, 826 F.Supp. 1046, 1049 (N.D.Tex.1993) (citing *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir.1976)).

Plaintiff's activities—both intrastate and interstate—render him exempt from the overtime provisions of the FLSA.[2]

### 2. Plaintiff's Minimum Wage Argument

■ Plaintiff's Complaint states a claim for overtime violations, not minimum wage

---

**2.** Plaintiff attempts to defeat Defendant's Motion for Summary Judgment by arguing that the 13(b)(1) exemption does not apply to Defendant's employees since Rent–A–Center's primary business is not transportation. This argument is unfounded and not supported by any case law. In fact, it is contradictory to

this Court's decision in *Webb v. Athens Newspapers, Inc.*, 999 F.Supp. 1464, 1472 (M.D.Ga. 1998), where this Court held 13(b)(1) provided an exemption to an employee of a newspaper company that was not primarily involved in transportation.

violations. The relevant portions of Plaintiff's Complaint provides: .

> Plaintiff was employed by Defendant during the above times at work weeks of more than 40 hours without compensating him for employment in excess of 40 hours at the rate of not less than one and one-half times the regular rate at which he should have been employed, contrary to Section 7 of the Act.

(Compl.¶ 3.) The Complaint mentions Section 6: "As a result of said violations of Sections 6 and 7 of the Act ..." (Compl.¶ 4); however the only "said violations" in the Complaint address overtime pay under Section 7, which does not include minimum wage violations.

The Federal Rules of Civil Procedure establish the standard for pleadings:

> Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks ...

Fed. R. Civ. Pro. 8(a). Plaintiff's Complaint does not contain a statement show-

ing he is entitled to unpaid minimum wages. In Plaintiff's Brief in Opposition to Motion for Summary Judgment, Plaintiff argues that he alleged a violation of Section 6 in his Complaint and testified in his deposition that "no payment for overtime was made, even as to minimum wage." (Pl.'s Br. in Opp. to Mot. for Summ. J. at 2.) However, this statement, which was in a Reply to Defendant's Motion for Summary Judgment, is insufficient. Not only is it not a part of the pleadings, it does not show that the Plaintiff is entitled to the "unpaid minimum wage." Plaintiff has failed to produce any evidence establishing that his hourly wages were below the minimum wage. Though Plaintiff's Brief is unclear, Plaintiff seems to assume that for each hour worked in excess of forty in a week, he is entitled to receive a minimum wage payment for the hours over forty per week, regardless of what he was paid for the other forty hours. This reasoning is flawed, shown by Section 30b02 of the *Field Operations Handbook*[3] which provides: "if the employee's total earning for the w/w [workweek] ... divided by the compensable hours equals or exceeds the applicable MW [minimum wage], the employee has been paid in compliance with Sec 6." Wage–Hour *Field Operations Handbook*, § 30b02, 12/9/88. Plaintiff has not produced any evidence showing that his total earnings are less than what he would have received if he had been paid the minimum wage for every hour worked.[4] Thus, the Court denies Plain-

---

3. The U.S. Department of Labor's Wage and Hour Division enforces the Fair Labor Standards Act. *See* 29 U.S.C.A. § 204(a). The Wage and Hour Division has issued instructions to its enforcement staff in its *Field Operations Handbook*. (Tab C to Def.'s Reply to Pl's Brief in Opp'n to Mot. for Summ. J.)

4. Plaintiff testified that as an Account Manager he was paid an hourly rate ranging from $12.00 per hour to $13.00 per hour. While

he was an Inside Outside Manager, he had an annual salary of $31,000. (Hutson Dep. at 86–87.) Thus, at all times during Plaintiff's employment with Rent–A–Center, his hourly rate was more than twice the applicable minimum wage. As the Defendant's pointed out in its Reply to Plaintiff's Brief in Opposition to Motion for Summary Judgment, Plaintiff would have had to have worked between 93 to 100 hours per week in order to have his average hourly wages below $5.15 per hour. (Def.'s

tiff's claim that he is entitled to minimum wage payment and grants Defendant's Motion for Summary Judgment.

### C. Plaintiff's Motion to Amend his Complaint

■ On August 15, 2001, Plaintiff filed a Motion requesting that this Court allow an amendment to his Complaint.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint shall be freely given when justice so requires. In considering whether or not to grant an amendment, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment. *Local 472 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Indus. of U.S. and Canada v. Georgia Power Co.*, 684 F.2d 721, 724 (11th Cir.1982).

Plaintiff's proposed amendment is untimely. It was filed ten months after Plaintiff's original Complaint was filed in this Court, two months after the close of discovery, and one month after Defendant moved for summary judgment. The Plaintiff has presented no explanation as to why the Court should overlook this delay. Though not binding on this Court, the Court notes that the Seventh Circuit has held that a district court judge has discretion to deny such an amendment: "when an amendment to a complaint is proposed after the defendant has moved for summary judgment, the plaintiff must show that the amendment is supported by 'substantial and convincing evidence'." *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 944 (7th Cir.1995). *See also Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir.1999) (holding plaintiff bears the burden of showing that delay was due to oversight, inadvertence or excusable neglect).

The Amended Complaint does not allege a new cause of action or reflect any newly discovered facts revealed during the course of discovery which might warrant an amendment. *See Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir.1982) (no abuse of discretion to deny leave to amend pleading where party knew of facts supporting proposed amendment when it filed original pleading).

Plaintiff's Amended Complaint seeks to make this case a class action with the Plaintiff as the representative of the class. (Amended Compl. ¶ 6.) Allowing this amendment would result in undue prejudice to the Defendant. Discovery closed on June 8, 2001; none of the discovery conducted by Defendant was designed to defend a class action. To allow a class action at this time would unfairly require the Defendant to conduct additional discovery and to revisit and supplement already completed discovery. *See Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir.1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided.")

Based on these considerations, the Court denies Plaintiff's request to amend his Complaint.

### III. CONCLUSION

Defendant's Motion for Summary Judgment (Tab # 10) is **GRANTED** and Plaintiff's Motion to Allow Amendment (Tab # 15) is **DENIED**.

Reply at 12.) Plaintiff has not made such    allegations.