**Prince E. MORRISON, and others similarly situated, Plaintiff,**

v.

**QUALITY TRANSPORTS SERVICES, INC., Defendant.**

**No. 05–61757–CIV.**

United States District Court,
S.D. Florida.

Jan. 30, 2007.

Maurice Jay Baumgarten, Anania Bandklayder Blackwell & Baumgarten, Miami, FL, for Plaintiff.

Leslie W. Langbein, Langbein & Langbein, Miami Lakes, FL, for Defendant.

## ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant Quality Transport Services's Motion for Summary Judgment [DE–55]. The Court has carefully considered the Motion, Plaintiff's Memorandum in Opposition [DE–61], Defendant's Reply [DE–66], and all exhibits, depositions and affidavits filed in support. The Court has also considered Plaintiff's Motion to Strike Declarations [DE–72], Defendant's Response [DE–71], and Plaintiff's Reply [DE–72], and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Prince E. Morrison ("Morrison"), a former employee of Defendant Quality Transport Services, Inc., ("QTS"), filed this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, alleging that QTS failed to pay him overtime compensation in violation of the FLSA. QTS is a private motor carrier company operating full-size motor coaches and mini-buses. Plaintiff was employed by QTS as a bus driver. Plaintiff alleges that he and other similarly situated current and former employees of QTS worked over forty hours in one or more weeks, but did not receive overtime compensation. Plaintiff seeks to recover unpaid overtime compensation, liquidated damages and attorneys' fees and costs.

On June 9, 2006, Morrison filed a motion seeking leave of this Court to notify all potential class members, pursuant to 29 U.S.C. § 216(b), that they have the right to opt-in the present action. Morrison defined the potential class as all similarly situated employees and former employees

of QTS who are or were employed as bus drivers by QTS on or after November 10, 2002, who have been damaged as a result of QTS's failure to properly compensate employees for hours worked in excess of forty hours during any work week. On July 17, 2006, the Court entered an Order permitting Court-supervised notice to potential class members. Sixteen plaintiffs have opted in since the notification was sent to potential class members.

Defendants filed this Motion for Summary Judgment alleging that Plaintiff and opt-in Plaintiffs (collectively "Plaintiffs") are exempt from compliance with the FLSA because they qualify for the motor carrier exemption to the Act. To that end, Defendant claims that Plaintiffs are subject to the authority of the Secretary of Transportation under the Motor Carrier Act because they have a substantial effect on interstate commerce, and therefore, Plaintiffs have no claims under the FLSA. Defendant also argues that even if Plaintiffs are not exempt from the overtime compensation requirements of the FLSA, Defendant is entitled to summary judgment on the issue of willfulness based on their reliance on *Chao v. First Class Coach Co., Inc.*, 214 F.Supp.2d 1263 (M.D.Fla. 2001). Finally, Defendant moves to dismiss the claims of opt-in Plaintiffs O'Connell, Carter and Bent because they did not work more than forty hours in any single work week. Plaintiff responds that the Defendant does not meet the criteria of the motor carrier exemption, specifically by arguing that Plaintiffs do not engage in interstate commerce, that Defendant has not demonstrated an absence of willfulness, and that genuine issues of material fact exist which preclude the entry of summary judgment on all issues.

## II. DISCUSSION

Defendant seeks summary judgment against Plaintiff and all opt-in Plaintiffs arguing that (1) Plaintiffs are exempt from the overtime provisions of the Fair Labor Standards Act and therefore not entitled to overtime compensation; (2) a two-year statute of limitations applies because Defendants did not act willfully; and (3) opt-in Plaintiffs O'Connell, Bent and Carter did not work over forty hours in any week and therefore are not entitled to overtime wages.

### A. *Summary Judgment Standard*

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### B. *FLSA Exemption*

■ ▪The FLSA requires that an employer compensate employees for hours worked in excess of forty per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). QTS contends that Plaintiffs are not entitled to overtime compensation because the FLSA exempts them from those provisions under the Motor Carrier Exemption. *See* 29 U.S.C. § 213(b)(1). The question of how Plaintiff spent his time is a question of fact, while whether those particular activities exclude him from the overtime benefits of the FLSA is a question of law. *Icicle Sea-*

*foods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986).

■ An employer relying on an exemption to the minimum wage and overtime provisions of the FLSA has the burden of proving the applicability of that exemption. *Klinedinst v. Swift Inv., Inc.*, 260 F.3d 1251, 1254 (11th Cir.2001). Given the remedial purpose of the FLSA, the exemptions from the FLSA's coverage must be narrowly construed against the employers seeking to assert them. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *see also Klinedinst*, 260 F.3d at 1254. An employer seeking to assert an FLSA exemption has the burden of proving that the employee falls "plainly and unmistakably within the terms and spirit" of the exemption. *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir.1997) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945)). Thus QTS has the burden of proving that Plaintiffs fall plainly with the terms and spirit of the Motor Carrier Exemption.

■ Section 213(b)(1) of the FLSA provides that the provisions of § 207 shall not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [49 U.S.C. § 31,502]." 29 U.S.C. § 213(b)(1).[1] Accordingly, the Motor Carrier Act grants authority to the Secretary of Transportation to regulate the maximum hours of service of employees who are: (1) employed by a carrier whose transportation of property or passengers is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) en-

---

**1.** Three years before the passage of the FLSA, Congress enacted the Motor Carrier Act to promote efficiency and safety in interstate motor transportation. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 657–58, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).

gaged in activities that directly affect the safety of operation of motor vehicles in interstate or foreign commerce. 29 C.F.R. § 782.2(a); *see Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181–82 (11th Cir.1991); *Hutson v. Rent–A–Center, Inc.*, 209 F.Supp.2d 1353, 1356 (M.D.Ga. 2001).[2]

### 1. Carrier subject to Secretary of Transportation's jurisdiction

█ As to prong one, Defendant argues that it is a carrier whose transportation of property or passengers is subject to the Secretary's jurisdiction under the Motor Carrier Act based on the following: 1) QTS holds a USDOT license, Def.'s Mot., Tab A; 2) QTS operates vehicles whose weight and/or passenger capacity falls within the authority of the Federal Motor Carrier Safety Administration (FMCSA), Def.'s Mot., Tab B, and 3) QTS was subject to regulation by the FMCSA including regular inspections by USDOT, Def.'s Mot., Tab C. Although Plaintiff disputes that Defendant has met this prong, it has not provided any evidence creating a genuine issue of material fact. Defendant's holding two insurance policies, one for less than the amount required for interstate carriers and the other for the required amount, and the DOT snapshot for 2006 do not undercut the evidence submitted by Defendant on this issue.

Accordingly, the Court agrees that Defendant was a motor carrier whose transportation of property or passengers is subject to the Secretary's jurisdiction under the Motor Carrier Act. *See Baez*, 938 F.2d at 181–82 (issuance of ICC permit indicat-ed that Secretary had already exercised jurisdiction over carrier). The Court must next inquire whether each of the Plaintiffs engaged in activities that directly affect the safety or operation of motor vehicles in interstate or foreign commerce. 29 C.F.R. § 782.2(a).

### 2. Activities that directly affect interstate commerce

█ The Secretary of Transportation has the power to set maximum hours for drivers if the company engages in even a minor involvement with interstate commerce, which includes a company that holds itself out as an interstate company and solicits that business, even though its prospect of obtaining such business is poor and some of its drivers never drive in interstate commerce. *Rossi v. Associated Limousine Servs., Inc.*, 438 F.Supp.2d 1354, 1361 (S.D.Fla.2006); *see Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947); *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153 (9th Cir.1994). However, the Secretary does not have automatic jurisdiction over all drivers of an interstate carrier; jurisdiction extends "only to drivers who reasonably could be expected to make one of the carrier's interstate runs, and that means more than a remote possibility." *Garcia v. Pace Suburban Bus Serv.*, 955 F.Supp. 75, 77 (N.D.Ill.1996) (citing *Reich*, 33 F.3d 1153). Moreover, for the reasonable expectation test to apply, "a carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof that interstate business was solicited," *Rossi,*

---

2. The Department of Labor's jurisdiction under the FLSA and the Department of Transportation's jurisdiction under the Motor Carrier Act are mutually exclusive and there is no overlapping jurisdiction. *Morris v. McComb*, 332 U.S. 422, 437–38, 68 S.Ct. 131, 92 L.Ed. 44 (1947). In order to avoid any conflict between these Acts, Congress decided that the Secretary of Transportation need not actually exercise his or her power to regulate under the Motor Carrier Act and that the FLSA's § 213(b)(1) exemption applies so long as the Secretary has the authority to regulate over a particular category of employees. *Spires v. Ben Hill County*, 980 F.2d 683, 686 (11th Cir.1993).

438 F.Supp.2d at 1361, and the carrier must be shown to "have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question," *Reich*, 33 F.3d at 1156.

Defendant argues that it has met this prong by providing evidence that it made actual trips in interstate commerce both by driving out-of-state charters and by driving intrastate routes that are part of the "practical continuity of movement" in interstate commerce. An employer may meet the requirement that its employees were engaged in activities that directly affect interstate commerce by showing that there was "practical continuity of movement across state lines from the point of origin to the point of destination" even if the route is wholly intrastate. 29 C.F.R. § 782.2; *Chao v. First Class Coach Co.*, 214 F.Supp.2d 1263, 1271 (M.D.Fla.2001)(motor carrier operates in interstate commerce if it can show that it operated in the "continuous stream of interstate commerce."). However, where a carrier transports passengers between an airport and another point in the state, "operating wholly within a State, selling no through tickets, and having no common arrangements with connecting out-of-State carriers," such transport represents intrastate commerce regardless of the passengers' ultimate destination or intent to complete an interstate journey. *Garcia v. Cartun*, 04–21074–CIV–UNGARO, at 9 (S.D.Fla. Dec. 9, 2004)(citing *Motor Transp. of Passengers Incidental to Air*, 95 M.C.C. 526, 536 (1964)).

Based on a review of the record, the Court finds that there are genuine issues of material fact such that the Court cannot conclude as a matter of law at this stage that each Plaintiff clearly falls within the Motor Carrier exemption. Here, Defendant bases its assertion that the exemption applies based on its "through-ticketing arrangement" with airlines, cruise companies and Amtrak. First, Kathy Herring, President of QTS, stated that a great portion of QTS's transfer services provided to other carriers is arranged through travel agencies. *See* Def.'s Mot. at 8; Tab A at ¶ 14. However, courts have held that travel arranged through a ground transportation service or travel agency is insufficient to establish practical continuity of movement. *Rossi*, 438 F.Supp.2d at 1362 ("[A] through-ticketing arrangement must be between the motor carrier and air carrier for continuous passage in order to render the motor carrier's operation interstate transportation.") (citing *In re Kimball*, 131 M.C.C. 908, 1980 WL 14197 (1980)).

Additionally, although Defendant has submitted invoices indicating trips paid for by various airlines, cruise companies and rail lines, there is no evidence of the actual agreement itself or the terms of such agreement between QTS and these companies to provide regular transportation services for "through" travel, nor has QTS demonstrated that passengers purchased a single ticket for both inter- and intrastate travel. *See United Transp. Union Local 759 v. Elizabeth Bus. Co.*, 111 F.Supp.2d 514, 519–520 (D.N.J.2000) (bus drivers held to be engaged in interstate commerce where at least some passengers purchased single ticket to ride New Jersey bus and buses continuing into New York); *Cartun*, 04–21074–CIV–UNGARO, at 10 (denying summary judgment where there was no specific evidence of the terms of arrangement between taxi company and interstate carriers). Moreover, although QTS alleges that it contracted with Amtrak to transport rail passengers, Plaintiffs have contradicted this allegation with evidence indicating that QTS had no contract with Amtrak but rather provided bus services on an emergency basis only. *See* Pls.' Opp., App. 13 at 7.

Although QTS has provided support for its assertion that it had provided some transfer services to air carriers and cruise companies, the Court cannot conclude based on these invoices alone, without a copy of QTS's agreements with these carriers or evidence of their terms, whether or not the arrangements between QTS and other carriers constituted a through-ticketing or other common arrangement that would bring it within the definition of "practical continuity of movement" in interstate commerce. *See Rossi*, 438 F.Supp.2d at 1362; *see also Garcia v. Cartun*, 04–21074–CIV–UNGARO (S.D.Fla. Dec. 9, 2004)(denying summary judgment where the defendant, a limousine company, failed to provide evidence of its agreement with the airline or evidence of the agreements terms that would enable the Court to determine whether it constituted a through-ticket arrangement). Therefore, the Court concludes that issues of material fact exist regarding whether the nature of the arrangements between QTS and interstate carriers such as airlines, cruise companies and railways-specifically whether they constituted through-ticketing arrangements-such that summary judgment is not appropriate.

Additionally, even assuming, *arguendo*, that Defendant had a through-ticketing or other common arrangement with interstate carriers, factual disputes remain as to which Plaintiffs were employed on such routes and in what time frame. The affidavits of several Plaintiffs indicate that they made no trips to airports, ports or railways at all or that they made stops at airports only as part of their regular local bus route. There is no evidence that passengers on such otherwise intrastate routes disembarking at the airport purchased a single ticket for use on both the bus and airline or other evidence of a practical continuity of movement in such trips. Nor is there evidence that tickets for these trips were purchased by out of state parties that would bring them within the meaning of interstate commerce.[3] *Cf. Chao*, 214 F.Supp.2d at 1273 (Holding that purchase by groups outside of the state of otherwise purely intrastate bus tickets are sufficient to bring those trips within the category of interstate transportation).

QTS contends that these drivers were nevertheless engaged in activity affecting interstate commerce because they could be asked to drive airport or port routes at any time. Plaintiffs' affidavits indicate otherwise, however. Plaintiffs have stated that it was their belief that they had the right to choose their route and that they were never assigned to routes that they did not wish to drive. *See* Pl.'s Opp., App. 2 at 3,8,11,15,18,20, 24. Additionally, there is no evidence that Plaintiffs were ever randomly assigned to drive airport or port routes. Although Louis Herring testified that any driver qualified to do so could be asked to drive interstate routes, this assertion is contradicted by Plaintiffs' statements and raises a factual issue regarding whether Plaintiffs could reasonably be expected to drive routes in interstate commerce.

Moreover, factual issues remain regarding whether the Secretary's jurisdiction spanned the entire class period and for which Plaintiffs. In order for a motor carrier to be subject to the Secretary's

---

**3.** Reviewing the record evidence, the only trip within the class period paid for by an out-of-state purchaser occurred on March 14, 2004 by the Jewish National Fund. The records indicate that these charters were driven by several different drivers on that day including Morrison, Bent, Perez and Delgado. To the extent this may demonstrate that these drivers were affecting interstate commerce under *Chao*, for the reasons stated above, the Court does not enter judgment as to these drivers because there is insufficient support to conclude that they were exempt for the entire class period.

jurisdiction, the must carrier must show that it engaged in interstate commerce within a reasonable period of time prior to the period in which jurisdiction is in question *Reich*, 33 F.3d at 1156. This "reasonable period" requirement has been interpreted to mean that a carrier is subject to the Secretary's jurisdiction for four months following its activity in interstate commerce; periodic activity in interstate commerce does not subject the carrier to continuous ongoing jurisdiction. *Reich*, 33 F.3d at 1156. Here, it is disputed that each of the Plaintiffs drove or could reasonably be expected to drive a route that affected interstate commerce. Even as to those drivers who arguably drove routes subject to through-ticketing arrangements, factual issues remain regarding when these drivers were engaged in such conduct.[4] Because it is unclear when the drivers were engaged in interstate commerce-even assuming the airport and seaport routes were arranged by through-ticketing arrangements-the Court cannot conclude as a matter of law that the drivers were exempt during the class period.

Based on the foregoing, the Court finds that there are genuine issues of material fact as to the application of the motor carrier exemption. Narrowly construing the exemption against Defendant, at this time the Court cannot find that as a matter of law Plaintiff Morrison and the opt-in Plaintiffs plainly and clearly fall within the meaning and the spirit of the motor carrier exemption of the overtime provisions of the FLSA for the period from November 2002 to the present. Accordingly, since factual issues remain, the Court will deny Defendant's motion for summary judgment regarding application of the exemption.

### C. *Railroad and Airway Exemptions*

 Defendant also contends that its employees are exempt under the railroad and airway exemptions, which apply to "any employee of an employer engaged in the operation of a rail carrier subject to subtitle IV of Title 49 ..." and "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act ...." 29 U.S.C. §§ 216(b)(2), (3). Defendant argues that these exemptions apply to QTS as a substitute for railways and airlines. However, material issues of fact exist as to which employees may have been engaged in providing terminal transfer services for railways and during what periods of time, preventing entry of summary judgment. *See Cederblade v. Parmelee Transp. Co.*, 166 F.2d 554 (7th Cir.1948) (applying railway exemption to bus operators).

### D. *Willfulness*

 Defendant also seeks judgment that, even if Plaintiffs are not exempt, any alleged violations were not "willful" and that a two-year statute of limitations under 29 U.S.C. § 255 applies, which would limit the length of Plaintiffs' recovery period. The statute governing the FLSA limitations period provides:

(a) [An FLSA action] may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

---

4. The Court notes that opt-in Plaintiff Orville Bent conceded in his affidavit that he drove out of state for QTS. *See* Pl.'s Opps., App. 2. However, there is no indication of when such trips occurred, specifically whether they occurred during the class period. The Court

cannot conclude that Mr. Bent was engaged in interstate commerce during the relevant time period for the purpose of this action, especially in light of the fact that he was employed by QTS from 1999 through May 2004.

29 U.S.C. § 255. The burden is on the employee to prove that the employer committed a willful violation. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). The standard for determining willfulness is "whether the employer 'knew or showed reckless disregard' for the matter of whether its conduct was prohibited by the [FLSA]." *Id.* Moreover, if an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful under this standard. *Id.* at 135 n. 13, 108 S.Ct. 1677.

Defendant moves for judgment on this issue arguing that it acted reasonably in not paying overtime wages to its bus driver employees based on its reliance on *Chao*, 214 F.Supp.2d 1263. Plaintiff responds that Defendant has not demonstrated a lack of willfulness because: 1) QTS refused to pay overtime despite cases in this District holding that the motor carrier exemption did not apply under similar facts, *see e.g., Mason v. Quality Transport Servs., Inc.*, 04–61009–CIV–AL-TONAGA (S.D.Fla. Aug. 25, 2005); *Rossi*, 438 F.Supp.2d at 1362; 2) QTS failed to conduct any legal research regarding whether its drivers were entitled to overtime; and 3) QTS had a policy of not paying overtime in place long before the decision in *Chao* was rendered.

 The issue of willfulness under § 255(a) is a question of fact for the jury not appropriate for summary disposition. *Soto v. McLean*, 20 F.Supp.2d 901, 913 (citing *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 162–63 (4th Cir.1992)) (holding in the context of § 255(a), "there is no reason issues of willfulness should be treated any different from other factual determinations relating to application of a statute of limitations that are routinely submitted to the jury."); *see also Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128, 1137 (10th Cir.2000); *McGuire v. Hillsbor-*

*ough County, FL*, 2007 WL 141129, *7 (M.D.Fla. Jan.17, 2007) ("whether a defendant committed a willful violation is a jury question"); *Acosta Colon v. Wyeth Pharm. Co.*, 363 F.Supp.2d 24, 29–30 (D.P.R.2005). Reviewing the evidence submitted by the parties, the Court concludes that issues of fact exist which should be determined as fact questions for the jury. Accordingly, the Court will deny Defendant's Motion as to the issue of willfulness.

### E. Motion to Dismiss claims of Bent, Carter, and O'Connell

Finally, Defendant moves to dismiss the claims of opt-in Plaintiffs Bent, Carter and O'Connell. Defendant asserts that O'Connell never worked over forty hours and was employed only on a part-time basis. *See* Def.'s Mot., Tab G. Similarly, Defendant argues that payroll records demonstrate that neither Bent nor Cart accrued overtime, or were even employed by QTS, during the class period. *See* Def.'s Mot., Tab A, K. Herring Decl. In response, Plaintiff disputes Defendant's contention that Bent did not work more than forty hours during the class period, providing payroll records that show that Plaintiff Bent did work more than forty hours in some weeks. Pl.'s Opp., App. 15. Plaintiff has come forward with specific facts disputing Defendant's allegations regarding Plaintiff Bent precluding dismissal of his claims. However, Plaintiff has not demonstrated any issue of disputed fact as to O'Connell and Carter's claims, and the Court will grant Defendant's Motion to dismiss the FLSA claims of O'Connell and Carter.

### F. Plaintiff's Motion to Strike

 Plaintiff moves to strike the affidavits attached to Defendant's Reply [DE–66] based on S.D. Fla. Local Rule 7.5 which states that "motions for summary judgment shall be accompanied by . . .

necessary affidavits ...." S.D. Fla. L.R. 7.5(a). However, Local Rule 7.1, which applies to motions generally, states that "[t]he movant may serve a reply memorandum with affidavits, declarations, or other materials provided that all such materials are strictly limited to rebuttal of matters raised in the opposing memorandum." S.D. Fla. L.R. 7.1.C(3). Thus, Defendant was permitted to submit affidavits in rebuttal to issues raised in Plaintiff's Opposition to the Motion for Summary Judgment and Plaintiff's Motion to Strike will be denied.

## III. CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [DE–62] is hereby **GRANTED in part and DENIED in part**; Defendant's Motion for Summary Judgment is DENIED as to the issue of whether Plaintiffs are exempt under the motor carrier exemption to the FLSA and to the issue of willfulness.

2. Opt-in Plaintiffs O'Connell and Carter's claims are hereby **DISMISSED**.

3. Plaintiff's Motion to Strike [DE–70] is hereby **DENIED**.